UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14CV-00041-HBB

WILLIAM SALTSMAN                                                                 PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of William Saltsman ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 20, DN16) and Defendant (DN 18) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered May 30, 2014 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed applications for Period of Disability, Disability Insurance Benefits, and Supplemental Security Income payments on March 3, 2011 (Tr. 201, 203). Plaintiff alleges that he became disabled on July 15, 2008 as a result of back problems, diabetes, vision problems, neck problems, right arm problems, and high blood pressure (Tr. 232). Administrative Law Judge Scott M. Staller ("ALJ") conducted a video hearing from Baltimore, Maryland on August 30, 2012 (Tr. 39). Plaintiff and his attorney, Mike Breen, attended the hearing in Bowling Green, Kentucky (Tr. 39). Also present and testifying was Arthur M. Brown, an impartial vocational expert (Tr. 40).

In a decision dated October 9, 2012, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 21-33). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 15, 2008, the alleged onset date (Tr. 23). At the second step, the ALJ determined that Plaintiff's degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, scoliosis, diabetes mellitus, hypertension, obesity, major depressive disorder, a generalized anxiety disorder, and borderline intellectual functioning are "severe" impairments within the meaning of the regulations (Tr. 23). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 23).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform light work with limitations (Tr. 26). More specifically, the ALJ found that Plaintiff could:

> occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He could frequently balance and occasionally stoop, kneel, crouch or crawl. The claimant must avoid even moderate

> exposure to dangerous moving machinery and unprotected heights. He must avoid concentrated exposure to excessive vibrations and extreme cold. The claimant would be able to understand, remember, and carry out simple instructions; make judgments on simple work related decisions; interact appropriately with the public, supervisors, and coworkers in a routine work setting; respond to usual work situations and to changes in a routine work setting; maintain attention and concentration for two-hour segments over an eight-hour period; and complete a normal workweek without excessive interruptions from psychologically or physically based symptoms. The claimant would also need verbal instructions to be given to him at work.

(Tr. 26).

Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of his past relevant work as a truck driver, school bus driver, and front-end loader (Tr. 31).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 31). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 31). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from July 15, 2008 through October 9, 2012, the date of the decision (Tr. 32-33).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 16). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).

## CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II

Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff makes multiple challenges to the ALJ's Finding No. 5, which addresses the fourth step in the five-step sequential evaluation process promulgated by the Commissioner (DN 16, Plaintiff's Fact & Law Summary at Page 7). With regard to finding No. 5, the ALJ made the following conclusion:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following limitations: the claimant could occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He could frequently balance and occasionally stoop,

kneel, crouch or crawl. The claimant must avoid even moderate exposure to dangerous moving machinery and unprotected heights. He must avoid concentrated exposure to excessive vibrations and extreme cold. The claimant would be able to understand, remember, and carry out simple instructions; make judgments on simple work related decisions; interact appropriately with the public, supervisors, and coworkers in a routine work setting; respond to usual work situations and to changes in a routine work setting; maintain attention and concentration for two-hour segments over an eight-hour period; and complete a normal workweek without excessive interruptions from psychologically or physically based symptoms. The claimant would also need verbal instructions to be given to him at work.

(Tr. 26).

Plaintiff first argues the ALJ did not properly consider objective medical evidence as to the severity of Plaintiff's medical conditions. More specifically, Plaintiff contends the Residual Functional Capacity (RFC) found by the ALJ has no substantial basis in the record. Id. at 8. In opposition, the Commissioner asserts the ALJ outlined substantial evidence in his decision supporting his RFC determination that Plaintiff could perform a light range of work (DN 18, Commissioner's Fact & Law Summary at Page 4).

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The Administrative Law Judge bases his residual functional capacity finding on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Contrary to Plaintiff's assertion, the ALJ properly considered the record as a whole and acknowledged Plaintiff's physical limitations in determining his residual functional capacity.

Plaintiff argues the ALJ never identified "any specific medical evidence in the record to support or explain his finding other than to review some of Mr. Saltsman's treatment history" (DN 16, Plaintiff's Fact & Law Summary at Page 8). Here, the ALJ thoroughly explained the medical evidence and how it relates to the limitations imposed by the ALJ.

The undersigned has carefully reviewed the evidence the ALJ used in making his decision. The ALJ noted Plaintiff's history of neck and back related issues beginning with a cervical discectomy and fusion in 2001 to correct cervical spondylosis (Tr. 27). He noted that more recent images taken in 2011 revealed scoliosis of the spine with mild osteoarthritis apparent in the thoracic and lumbar spines (Tr. 27). With regard to treatment of neck and back related issues, the ALJ noted as follows:

> [T]he record documents ongoing complaints of neck and back pain over the period in question but little specific details as to the claimant's functioning with physical findings . . . More detailed treatment records begin in June 2011, when the claimant established care with Dr. Gregory Skaggs, MD. At that time, the claimant admitted lower back pain, but denied any joint pain, joint swelling or muscle pain. Upon examination, claimant showed mild tenderness to palpation in the cervical and lumbar region, but otherwise showed normal range of motion and normal strength. His upper and lower extremities also appeared normal with normal strength and motor function. Subsequent treatment records note complaints of 5/10 intensity that waxed and wane[d] while reporting no associated weakness, sensory loss, or parethesias. Physical findings note mild to moderate tenderness in the cervical and lumbar region but otherwise intact strength and motor function with normal gait and an ability to stand without difficulty through September 2011 . . . As of May 2012, Dr. Skaggs found the claimant to show no spinal tenderness with normal range of motion and normal muscle strength. Similarly, in August 2012, the claimant showed only mild tenderness to palpitation in the lumbar region with normal spinal range of motion, strength, and functioning.

(Tr. 27-28) (citations to record omitted).

The ALJ also considered evidence from the record regarding Plaintiff's diabetes, pointing to treatment notes from July 2011 stating Plaintiff's diabetes was well controlled with oral medication (Tr. 28). However, the ALJ indicated ambiguity in the record here because there is evidence Plaintiff was taking insulin as of January 2011 (Tr. 28). The ALJ concluded the treatment records document Plaintiff's diabetes as well controlled without complaints of neuropathy through 2011 (Tr. 28). And although Plaintiff cited peripheral neuropathy and paresthesias during his April 2011 consultative examination, Plaintiff was observed at that time ambulating without difficulty throughout the office (Tr. 29).

Further, the ALJ considered evidence relating to Plaintiff's mental impairments (Tr. 30). Plaintiff underwent a psychological consultation from Craig S. Cabezas, Ph.D., in May 2011. The ALJ noted Plaintiff demonstrated some deficits in attention and concentration (Tr. 30). Additionally, the ALJ recognized Plaintiff's full-scale IQ score of 70 on the Wechsler Adult Intelligence Scale, indicating borderline intellectual functioning range (Tr. 30). Further, the ALJ recognized that Plaintiff's capacity for understanding instructions in work circumstances would be primarily limited to verbal instructions, and Plaintiff's tolerance for work related stress and pressure was a moderate impairment (Tr. 30).

The ALJ's examination of the record in determining Plaintiff's residual functional capacity was not only thorough, but also addressed both favorable and unfavorable evidence regarding Plaintiff's impairments and limitations. Therefore, substantial evidence supports the ALJ's residual functional capacity finding.

Plaintiff also challenges the ALJ's residual functional capacity determination, alleging the ALJ erred in determining that Plaintiff's testimony about the limitations of his impairments, including pain, was not credible (DN 16, Plaintiff's Fact & Law Summary at Page 9). At the

fourth step of the sequential evaluation process, the Administrative Law Judge considers the subjective allegations of pain and makes credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p. After an Administrative Law Judge determines there is objective medical evidence of an underlying medical condition, he must determine "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). Beyond medical evidence, there are seven factors that the ALJ should consider in evaluating Plaintiff's credibility.[1]

Here, the ALJ determined the objective medical evidence does not support Plaintiff's subjective allegations of pain and other symptoms. The ALJ evaluated Plaintiff's ongoing claims of neck and back pain, pain radiation into the legs, and peripheral neuropathy and parethesias (Tr. 27-29). After evaluating Plaintiff's claims of pain, the ALJ used treatment notes from the medical records to rebut the severity of Plaintiff's allegations. For instance, after noting Plaintiff's complaints of 5/10 intensity of neck and back pain, the ALJ followed up with evidence from treatment records indicating only "mild to moderate tenderness in the cervical and lumbar region but otherwise intact strength and motor function with normal gait and an ability to stand without difficulty . . . " (Tr. 28). Under the *Duncan* framework, this objective evidence neither confirms the severity of pain which Plaintiff complains nor does it show the objectively established medical condition is of such severity that can reasonably be expected to cause the pain.

---

1 The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Social Security Ruling 96-7p.

See Pasco v. Comm'r of Soc. Sec., 137 F. App'x 828, 835 (6th Cir 2005) (citing Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986)).

It also bears pointing out that the ALJ did *not* find Plaintiff's allegations entirely incredible. The ALJ's ultimate RFC finding was rather restrictive, imposing significant limitations on Plaintiff's ability to work. Further, among the seven factors listed, the ALJ specifically discussed Plaintiff's daily activities, the intensity of the Plaintiff's pain, the medications used by Plaintiff, and treatment, other than medication, Plaintiff received or that was available to him. Ultimately, the ALJ found the treatment records to indicate relatively few limitations in range of motion, strength, and ambulation, which contradicts Plaintiff's claims (Tr. 29). Accordingly, the undersigned finds substantial evidence in the record supports the ALJ's decision that Plaintiff's subjective pain allegations were not entirely credible.

Plaintiff also challenges the ALJ's residual functional capacity determination, claiming the ALJ violated the treating physician rule by not giving controlling weight to Dr. Skaggs' opinion (DN 16, Plaintiff's Fact & Law Summary at Page 19). Plaintiff further argues the longevity and frequency of treatment by Dr. Skaggs led to observations about Plaintiff that cannot be found elsewhere (Id. at 23). Additionally, Plaintiff claims that Dr. Skaggs' findings are consistent with the record as a whole (Id. at 22). Commissioner counters that the ALJ discussed Dr. Skaggs' opinion in the decision and provided an adequate rationale for discounting it, in compliance with the regulations and Sixth Circuit case law (DN 18, Commissioner's Fact & Law Summary at Page 5).

Treating source opinions must receive "controlling weight" when two conditions are met: (1) the medical opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the medical opinion "is not inconsistent with other substantial

10

evidence in . . . [the] case record." 20 C.F.R . §§ 404.1527(c)(2), 416.927(c)(2); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). If the Administrative Law Judge does not give the treating physician's medical opinion controlling weight, "then the opinion is weighed based on the length, frequency, nature, and extent of the treating relationship, . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." Gayheart, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Further, the Administrative Law Judge must provide "good reasons" for the weight given to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p; Gayheart, 710 F.3d at 376; Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 545-46 (6th Cir. 2004). Notably, "[t]hese reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Gayheart, 710 F.3d at 376 (citing Social Security Ruling 96-2p). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" Gayheart, 710 F.3d at 376 (quoting Wilson, 378 F.3d at 544).

Here, the ALJ provided a thorough summary of the medical evidence in the record before addressing the weight assigned to medical opinions (Tr. 26-29). The ALJ concluded that despite mild to moderate tenderness of the spine, the record largely documents normal range of motion and intact strength throughout his musculoskeletal system (Tr. 29). Further, the ALJ observed that the record contains little evidence of persistent neuropathy affecting the claimant's exertional abilities (Tr. 29). The ALJ then discussed the weight he accorded to the medical opinion of Dr. Skaggs, a treating physician. Specifically, the decision reads as follows:

11

> Little weight is given to the medical opinion provided by Dr. Gregory Skaggs, as his own objective findings do not support such limited functioning. Dr. Skaggs limited the claimant to sitting a maximum of two hours while standing or walking less than two hours in an eight-hour workday. He also imposed lifting restrictions of five pounds frequently and ten pounds occasionally. These restrictions are inconsistent with the medical findings as summarized in the above discussion. Dr. Skaggs' own records consistently note mild to moderate cervical and lumbar tenderness with relatively little, if any, limitations in range of motion, strength, or ambulation. His opinion also calls for three to ten unscheduled breaks during the workday and more than four absences per month—restrictions that are baseless according to the medical evidence. For such reasons, his opinion has been accorded little weight.

(Tr. 29) (citations to record omitted).

Although the ALJ's explanation is brief, it expressly states why Dr. Skaggs' opinion failed to meet the first prong of the "controlling weight" test. Specifically, the ALJ found Dr. Skaggs' standing, walking, and lifting restrictions to be inconsistent with his observations in the objective treatment notes, indicating his opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ explained the discrepancy, by noting that Dr. Skaggs' own records consistently noted mild to moderate cervical and lumbar tenderness with relatively little, if any, limitations in range of motion, strength, or ambulation (Tr. 29).

Additionally, the ALJ expressed "good reasons", which are sufficiently clear to put Plaintiff on notice as to why little weight was given to Dr. Skaggs' opinion. Specifically, the ALJ concluded the limitations were not supported by the objective evidence in the record and the doctor's own treatment notes. The undersigned has reviewed the treatment notes of Dr. Skaggs with a focus on the doctor's comments concerning Plaintiff's continuous neck and back pain. Although the treatment notes do reflect the doctor's observation of mild to moderate tenderness to palpation present cervical region and lumbar region, they also repeatedly indicate that patient's

conditions have remained the same and he presented in no acute distress (Tr. 557, 560-61, 565-67, 578, 581, 584-86, 589, 591-92, 598-99, 602-03, 609-10, 615-16). Repeated examination notes made by Dr. Skaggs also indicate that Plaintiff has normal spinal range of motion, normal gait, and ability to stand without difficulty. Id.

Further, the undersigned reviewed the treating source opinion questionnaire that Dr. Skaggs filled out on April 20, 2012. In the questionnaire, Dr. Skaggs expressed opinions regarding Plaintiff's ability to work and limitations imposed by Plaintiff's physical impairments (Tr. 605-07). Dr. Skaggs' opinion diagnosed Plaintiff with degenerative disc disease, diabetes, and hyperlipidemia, and gave Plaintiff a fair prognosis (Tr. 605). Dr. Skaggs' noted that Plaintiff experiences pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks frequently (Tr. 606). Additionally, Dr. Skaggs' indicated that Plaintiff can only sit for two hours at one time before needing to get up, and can only stand one hour before needing to sit down (Tr. 606). Further, Dr. Skaggs' indicated Plaintiff will need 3-10 unscheduled breaks during an eight hour work day and Plaintiff will miss more than four days of work per month as a result of his impairments (Tr. 608).

The undersigned also reviewed other evidence in the record and found discrepancies between Dr. Skaggs' opinion and other medical evidence. For instance, when Edmund Wilkins, M.D. performed a consultative examination on the Plaintiff, he noted Plaintiff "ambulates without difficulty" (Tr. 537). Although claimant reported periodic blurry vision when his blood sugar was markedly elevated, Dr. Wilkens concluded Plaintiff has "essentially normal eye exam with good uncorrected distance in both eyes" and indicated that blurry vision would be directly related to poorly controlled diabetes (Tr. 539). Thus, Dr. Skaggs' opinion is not consistent with the record as a whole and is not supported by relevant evidence. Accordingly, the ALJ gave good

reasons for giving little weight to Dr. Skaggs' opinion and those good reasons were supported by substantial evidence from the record.

Plaintiff also challenges the ALJ's residual functional capacity determination by alleging the ALJ's mental health findings are inconsistent with the findings made by Dr. Cabezas (DN 16, Plaintiff's Fact & Law Summary at Page 14). More specifically, Plaintiff alleges that the ALJ did not fully consider Dr. Cabezas' Consultative Examination, by "cherry-picking" the evidence that supported denying Plaintiff's claim (DN 16, Plaintiff's Fact & Law Summary at Pages 14-16).

An Administrative Law Judge's failure to discuss certain observations does not indicate that they were not considered. See Thacker v. Comm'r of Soc. Sec., 99 F. App'x 661, 665 (6th Cir. 2004). It is well settled that, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006) (quoting Loral Defense Systems-Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)). Further, an ALJ "does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position." Solembrino v. Astrue, No. 1:10-CV-1017, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011).

The ALJ did not "cherry pick" evidence from Dr. Cabezas' evaluation. Even though the ALJ did not repeat every sentence from Dr. Cabezas' evaluation, he did expressly consider evidence from the evaluation that was both favorable and unfavorable to Plaintiff in his RFC determination. Additionally, the ALJ looked to medical opinions, treatment notes, and the

14

Plaintiff's testimony in making his decision, therefore, the ALJ's RFC assessment is supported by substantial evidence from the record.

Plaintiff also challenges the residual functional capacity by claiming the ALJ did not properly consider the combined effect of all of his impairments (DN 16, Plaintiff's Fact & Law Summary at Page 18). On the other hand, the Commissioner argues the ALJ properly considered the impairments in combination when he explicitly stated that Plaintiff "does not have an impairment or combination of impairments" that met or equaled a listing (DN 18, Commissioner's Fact & Law Summary at Page 6) (quoting Tr. 23).

A disability may result from multiple impairments, no one of which alone would constitute a full disability. Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 1990). However, an Administrative Law Judge's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the Administrative Law Judge specifically refers to a "combination of impairments" in their factual findings. Gooch v. Sec'y of Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987).

Here, the ALJ's finding No. 4 expressly refers to "the claimant's impairments" (plural) (Tr. 24). The ALJ also refers multiple times to "the claimant's impairments considered singly and in combination" (Tr. 24). It is clear that Plaintiff's physical and mental impairments were considered collectively, because the ALJ specifically found, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. 27). Further, the ALJ indicates his findings were made based on "careful consideration of the entire record" (Tr. 26). See Gooch, 833 F.2d at 592. Therefore, the ALJ's decision is supported by substantial evidence and comports with applicable law.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:    Counsel